**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stefanie Ontiveros,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-22-00670-PHX-JAT<br><br>**ORDER** |

　　　　Pending before the Court is Plaintiff Stefanie Ontiveros's appeal from the Commissioner of the Social Security Administration's ("SSA") denial of her father's application for Social Security Disability Insurance ("SSDI"). (Doc. 1). The appeal is fully briefed, (Doc. 12, Doc. 14, Doc. 17). The Court will now rule.

**I.　BACKGROUND**

　　　　The issues on appeal are whether the Administrative Law Judge ("ALJ") committed harmful error by rejecting Plaintiff's testimony about Claimant's symptoms, and whether the ALJ had substantial evidence for his Residual Functional Capacity ("RFC") determination. (Doc. 8-3).

　　　　**a.　Factual Overview**

　　　　Francisco Hernandez ("Claimant"), filed for SSDI in March of 2018. (*See id.* at 12). He asserted that his disability began February 1, 2012, when he was initially hospitalized for a heart attack. (Doc. 12 at 2–3). His claim stemmed out of the heart attack and resulting coronary and heart related conditions. (*See id.* at 3). He was last insured for SSDI benefits

on December 31, 2012. (*Id.* at 2). His claim was initially denied on May 31, 2018. (Doc. 8-3 at 12). After requesting, but before receiving, a hearing before an ALJ, Claimant passed away. (*Id.*). In February of 2021, after a telephonic hearing at which Plaintiff, Claimant's daughter, testified, the ALJ denied the claim. (Doc. 12 at 2). The SSA appeals Council later denied Plaintiff's request for a review of that decision and adopted the ALJ's decision as the final decision of the Commissioner. (Doc. 8-3 at 9). Plaintiff now appeals the ALJ's decision.

### b. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual

functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### c. The ALJ's Application of the Factors

Applying the first step, the ALJ found that Claimant had not engaged in substantial gainful activity between the time he was first admitted to the hospital following his heart attack on February 1, 2012, and his date last insured of December 31, 2012. (Doc. 8-3 at 15).

At the second step, the ALJ found that Claimant had three severe impairments under 20 CFR 404.1520(c): coronary artery disease, congestive heart failure, and status-post myocardial infarction. (*Id.*). The ALJ also found that Claimant had a number of other non-severe impairments including diabetes mellitus, hypertension, and hyperlipidemia. (*Id.*). These impairments were not severe, the ALJ found, because the claimant had done well, and there was no linkage between these impairments "and any work-related limitation prior to the date last insured." (*Id.*).

At the third step, the ALJ found that Claimant did not have an "impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments ...." (*Id.*). He found no evidence that any single impairment, or combination of impairments were severe enough to meet any of the listed impairments. (*Id.*). The ALJ then looked at the record, all of claimant's impairments, and prior medical opinions and administrative medical findings. (*See id.* at 16). He found, after considering Plaintiff's testimony regarding Claimant's symptoms, that Plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record ...." (*Id.* at 17). The ALJ found that although Claimant's severe impairments did cause "some limitations[,]" the majority of the evidence supported the conclusion that Claimant could perform a "reduced range of light exertional level work ...." (*Id.* at 19).

Finally, at the fourth step, the ALJ found that Claimant's RFC would have allowed him to perform his past relevant work as a drilling superintendent. (*Id.* at 20). Because of this finding, the ALJ did not assess the fifth step. (*Id.* at 20–21). The ALJ ultimately determined that Claimant was not disabled for purposes of SSDI from the period of his alleged onset date through the date last insured. (*Id.* at 21).

**II. LEGAL STANDARD**

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). Substantial evidence means "more than a scintilla ... but less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Under this standard, courts look at "an existing administrative record and ask[] whether it contains sufficient evidence to support the [ALJ's] ... factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). This Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting

*Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility, however. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, this Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

When specifically assessing SSDI claims, the ALJ's inquiry is limited to assessing whether the claimant had a disability in the period between the alleged onset date and the date last insured. The main source of evidence for this is medical records and testimony from or about this period. Evidence, specifically testimony, about the claimant from before or after this period can be looked to, but only for the limited purpose of assessing whether claimant was under a disability before the date last insured. As the Ninth Circuit has explained, evidence relating to the patient's condition after the date last insured is only "relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988); *Petty v. Astrue*, 550 F.Supp.2d 1089, 1097 (9th Cir. 2008); *See also*, *Fyfle v. Finch*, 311 F.Supp. 552, 557 (W.D. Pa. 1970). Furthermore, any evidence that shows a deterioration in claimant's condition after the date last insured "is, of course, irrelevant." *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971). Thus, an ALJ need not consider evidence showing that a claimant became disabled after the eligible period.

In many cases, the ALJ is required to make credibility determinations relating to a claimant's testimony or a lay witness's testimony. The ALJ must consider all witness testimony offered "concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin*, 454 F.3d 1050, 1053 (9th Cir. 2006). This is true not just of claimant testimony about pain and symptoms, but also of lay witness testimony about the same. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). For claimant testimony, the ALJ must engage in a two-part inquiry. First, he must see whether there is "objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged[.]" *See Smolen*, 80 F.3d at 1281. Second, the ALJ must evaluate evidence relating to the intensity, persistence, and limiting effects of the alleged symptoms. *See* 20 C.F.R. § 404.1529. Notably, the claimant does not need to produce "objective medical evidence of the pain" itself or of the "causal relationship between the medically determinable impairment and the symptom." *Smolen*, 80 F.3d at 1282. Furthermore, the claimant does not need to show that the alleged impairment "could reasonably be expected to cause the severity of the symptom," only that it could reasonably "have caused some degree of the symptom." *Id.* If an ALJ believes that this testimony should be rejected for lack of credibility, he must give "specific, clear and convincing reasons" for discounting it. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The standard is far less demanding for lay witness testimony, however. To reject lay witness pain and symptom testimony, the ALJ need only provide "germane reasons[.]" *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017). One such reason is that the lay witness testimony "conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Thus, the ALJ does not need to provide as robust reasoning in this context as he would have to if he were rejecting claimant testimony.

### III. DISCUSSION

Plaintiff claims that the ALJ erred in his RFC analysis by rejecting her testimony about Claimant's symptoms. (*See* Doc. 12 at 9). She asserts that the ALJ failed to give "specific clear, and convincing reasons" for doing so. (*Id.*). Plaintiff also claims that the RFC was flawed because the ALJ did not base his assessment of Claimant's work capacities on substantial evidence in the record as a whole. (*Id.* at 14). She additionally contends that the ALJ failed to look to evidence of Claimant's symptoms from after the date last insured. (Doc. 17 at 5, 8–9).

**a. Credibility of Plaintiff Testimony**

Plaintiff asserts that her testimony should be judged under the "specific, clear, and convincing" standard for claimant testimony. Although she has been substituted for the

original party in the case, this Court finds that she is still a lay witness. Thus, the "germane reasons" standard will be applied. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Although Plaintiff is legally standing in the shoes of the original claimant, for purposes of analyzing symptom testimony she should not be treated as a "replacement of the claimant's position and/or perception ..." as she contends. (*See* Doc. 17 at 4). When the heightened standard for rejecting symptom testimony was first articulated, it was meant to account for the individualized experiences of pain and symptoms that each person experiences. *See Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 584 (9th Cir. 1988). As the Court in *Varney* stated, "we have recognized that pain is a highly idiosyncratic phenomenon, varying according to the pain threshold and stamina of the individual victim." *Id.* (internal quotations omitted). The threshold for rejection of symptom testimony given by the claimant is high to ensure that the court takes into account the individualized experiences of symptoms. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (noting that "[a] finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony ...."). It would not make sense to apply this heightened standard to Plaintiff's testimony. Plaintiff might have seen and potentially understood the unique aspects of the pain and symptoms the original claimant was experiencing, but she did not experience them herself. Consequently, there is no reason for the higher standard to apply because there is no worry that the ALJ arbitrarily rejected testimony that only the person experiencing the pain and symptoms could give. Plaintiff should, therefore, be treated as a third party and her testimony should only be subject to the germane reasons standard.

The ALJ's rejection of Plaintiff's symptom testimony easily meets this standard. The ALJ found that Plaintiff's testimony regarding her father's symptoms was "not entirely consistent with the medical evidence and other evidence in the record ...." (Doc. 8-3 at 17). The ALJ noted that after the initial treatment for his heart condition, Claimant had a regular heart rate and rhythm, his heart sounds were within normal limits, the aorta was not

enlarged, no bruit was heard, his gait was normal, and that a number of other tests showed normal results. (*See id.*). Thus, the ALJ concluded, there was no indication that Claimant experienced any limitations before the date last insured like those described by Plaintiff. (*See id.*). The ALJ then pointed out that at a follow up visit, Claimant again had normal results and had no major issues. (*See id.*). The results from this visit were consistent with a residual functional capacity indicating that claimant could perform light work. (*See id.*). Furthermore, Claimant had normal results, the ALJ found, across a number of follow up appointments. (*See id.* at 18). After a three-year gap in doctor visits, Claimant was again found to be functioning normally, according to the ALJ. (*See id.*). The ALJ also noted that Claimant was working construction and riding his bike routinely. (*See id.*). Given this medical and daily activity evidence, the ALJ concluded that Plaintiff's testimony was "not fully consistent with the objective evidence." (*See id.*). Furthermore, the ALJ added that the evidence indicating that Claimant "failed to follow treatment recommendations" and was "non-compliant with medication and office visits" shows "a possible unwillingness to do that which is necessary to improve his condition." (*See id.* at 18–19). The evidence cited by the ALJ for rejecting Plaintiff's testimony meets and exceeds the "germane reasons" standard. Thus, this Court finds that the ALJ did not commit error in rejecting Plaintiff's symptom testimony.

### b. Residual Functional Capacity Analysis

Finally, Plaintiff asserts that the ALJ erred in his RFC analysis because he offered no evidence for his finding that Claimant could perform work at the light exertional level. (*See* Doc. 12 at 14). Plaintiff states that the ALJ "did not cite to specific medical records[,]" and only found the agency nonexamining reviewer's opinion partially persuasive. (*Id.*). This, she contends, does not constitute "substantial evidence" to support the RFC finding. (*See id.* at 14–15). This is a mischaracterization of the ALJ's analysis, however. He cited to numerous medical reports and reports of daily activities. (*See* Doc. 8-3 at 16–20). He also credited the assessment of the agency doctor to support his RFC determination. (*See id.*). Consequently, this Court finds that the ALJ did have substantial evidence for his RFC

finding.

As noted above, the ALJ cited to medical records from a number of office visits that showed relatively normal heart function between the onset date and the date last insured. (*See id.* at 17–18). He also pointed out the "significant gaps in claimant's history of treatment[,]" finding this to be evidence that Claimant "was not limited as alleged prior to the date last insured." (*See id.* at 18). Additionally, the ALJ noted that Claimant failed to follow treatment recommendations, was non-compliant with medication, and did not attend necessary office visits. (*See id.*). There was also evidence about Claimant's daily activities, which showed that he "worked construction and rode a bike on a routine basis." (*See id.* at 18) (internal quotations omitted). Plaintiff asserts that Claimant did not in fact work construction, but rather worked odd jobs as a handyman. (*See* Doc. 12 at 13). Yet evidence in the record indicated that he worked construction. (*See* Doc. 8-10 at 6). Finally, the record included medical testimony from a non-treating physician. The physician stated that Claimant could engage in light work. The ALJ found this testimony "partially persuasive" as it was consistent with the other evidence in the record. (*See* Doc. 8-3 at 19). All of this constitutes substantial evidence for the ALJ's conclusion. *See Luther*, 891 F.3d at 875; *Revels*, 874 F.3d at 654.

Plaintiff also contends that the ALJ erred because he was required to consider testimony relating to Claimant's symptoms after the date last insured. (*See* Doc. 17 at 5, 8–9). She contends that the ALJ must look at this evidence in order to adequately consider the record as a whole. (*See id.* at 8). First, the ALJ did cite to evidence from office visits from February 2015, and December 2016, which showed that Claimant was functioning relatively normally. (*See* Doc. 8-3 at 18). Second, and more importantly, the ALJ is not required to cite to those records if they do not provide evidence that Claimant was under a disability prior to the date last insured. *See Bowen*, 849 F.2d at 1225. Here Plaintiff states that this evidence shows that Claimant "suffered severe cardiac impairments, including consistently low ejection fractions" in the time period after the date last insured. (*See* Doc. 17 at 9). Yet this is evidence that Claimant's condition may have deteriorated after the date

last insured, or that he became disabled during this period. As the Ninth Circuit has noted, this evidence is irrelevant to the question of whether Claimant was disabled during the eligibility period. *See Gardner*, 452 F.2d at 858. Accordingly, this Court finds that the ALJ did not err in failing to consider this evidence or in his overall RFC determination.

**IV. CONCLUSION**

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 28th day of June, 2023.

James A. Teilborg
Senior United States District Judge